## In re STEININGER MERCANTILE CO.

### BAINBRIDGE STATE BANK et al. v. TONGE et al.

(Circuit Court of Appeals, Fifth Circuit.  April 9, 1901.)

#### No. 927.

BANKRUPTCY—VOID PRIOR INCUMBRANCES—MORTGAGES TO HINDER CREDITORS.
A corporation executed mortgages covering all its property to favored creditors, who were not pressing it for payment nor asking to be secured, intending thereby to force indulgence from its other creditors and further advances from those secured.  *Held*, that they were intended to hinder, delay, or defraud creditors, within Bankr. Act 1898, § 67, declaring void incumbrances made with such intent within four months prior to filing a petition in bankruptcy.

Appeal from the District Court of the United States for the Southern District of Georgia.

The main facts are as follows, substantially taken from appellants' brief: The Steininger Mercantile Company was a corporation engaged in the business of merchandising in the city of Bainbridge, Decatur county, Georgia, was of good financial standing, and had no mortgages or other liens whatever against them, and had the reputation of being solvent, and had recently enlarged its storehouse and increased its stock and insurance preparatory to doing a larger business.  On November 29, 1898, Mr. R. A. Lytle, president of said corporation, finding said corporation temporarily embarrassed, sent for and consulted an attorney, Judge B. B. Bowers, of said city, stating to him that the corporation was perfectly solvent, and that, if it could get indulgence and collect up its assets, it could pay its creditors, but that it could not raise the ready cash to pay its maturing debts; that the assets of the corporation amounted to $61,780.91, and the debts to about $37,000, and that the cause of the embarrassment was the recent enlargement of its business, and the not having proceeded against its credit customers for payment as vigorously as it could have done, owing to the low price of cotton and the stringency of the times.

Upon this statement said attorney advised him to execute mortgages to such of his creditors as would be likely to make him further advances, and to such others as might become apprehensive, and with their aid he might get indulgence from the other creditors, or further advances from those secured to pay off those that would not give indulgence, and thus continue to carry on the business, and ultimately pay off all of the creditors. Acting under this advice, the president of said corporation procured the said attorney to prepare said mortgages, which he did to the number of 39, taking the whole night therefor, and said mortgages were duly signed, executed, and filed for record in the clerk's office of the superior court of Decatur county early in the morning of November 30th, some by said president himself, and others by the mortgagees to whom the mortgages had been delivered; said mortgages covering the stock of goods owned by said corporation, and also embracing the notes and accounts and substantially all the property of the corporation. The debts amounted to about $37,000, and the assets to about $67,000, and the mortgages to $26,000, and the whole number of creditors was about 220, and the number who were tendered securities was 39. all of whom surrendered their mortgage security except these present 5 appellants. The said corporation also made and executed to its attorneys, B. B. Bowers and Donaldson & Hawes, a mortgage upon its assets to secure them for professional services to be rendered said corporation in the management of its business and tiding it over its present embarrassment, for which a note was given in the sum of $2,500, due one day after date, and dated November 30, 1898. All the mortgages executed in favor of the five appellants were conditioned for the payment of notes dated November 29, 1898, and due one day after date, and containing, among other provisions, one as follows: "It is stipulated that this note be placed with B. B. Bowers and A. L. Hawes for collection at ten per cent. on the whole of principal and interest as attorney's fees, all to be paid out of any principal and interest collected." At the time said mortgages were made and executed, the officers of said corporation did not expect or anticipate proceedings in bankruptcy, and the holders and owners of said mortgages in question did not know, at the time they accepted said mortgages, that the Steininger Mercantile Company was insolvent, or that said mortgages were made with the intent to prefer them, except such notice as arose from the mere fact of giving the mortgages without previous request, and the fact that many of the debts secured were not due, and the pay day was advanced, so that the mortgages could be foreclosed at once; and each one was notified separately that his mortgage was filed for record in the clerk's office for his acceptance, without explanation why the mortgages were given, and each of the appellees accepted his mortgage without any notice or knowledge that any other creditor had a mortgage. Neither Bowers nor Donaldson & Hawes represented any of said creditors secured by said mortgages until after the mortgages were accepted and recorded. The attorneys for the creditors opposing the mortgages are the attorneys for the trustees, the appellees in this case. On the afternoon of the 30th of November, after said mortgages were executed, delivered, and recorded as aforesaid, the five mortgagees, the appellants in this case, learning that other creditors of said corporation were endeavoring to procure bond in order to sue out attachments against said corporation, proceeded to foreclose their mortgages, have executions issued from said foreclosure, and the sheriff to take charge of the goods. After said stock of goods was foreclosed on by these appellants, the unsecured creditors, together with the balance of the mortgage creditors who had surrendered their mortgage liens, filed a petition to declare the Steininger Mercantile Company an involuntary bankrupt, based upon the act of bankruptcy of making and executing these mortgages; alleging, under oath, that the Steininger Mercantile Company did make and execute these mortgages, intending them for illegal preferences, and also alleging that the mortgages constituted an assignment to creditors, and in either event were void. The district court sanctioned the petition, enjoined the sheriff from selling under the foreclosures, and placed the stock of goods, notes, and accounts and all other property of the Steininger Mercantile Company in the hand of a receiver, who sold the goods for $9,500 cash, and went forward collecting up the assets of

the Steininger Mercantile Company, who resisted the proceedings to the best of its ability, especially the allegations of insolvency and illegal preferences. On the 16th day of January, 1899, the district court adjudged the Steininger Mercantile Company an involuntary bankrupt, on the ground of it making and executing the mortgages. The said corporation having been adjudged a bankrupt, the matter was referred to one of the referees in bankruptcy of said court to take such further steps as are required by the bankruptcy law, which said referee called a meeting of the creditors of said corporation for the purpose of proving their respective claims. At the time of the meeting of the creditors these appellants offered to prove their said claims as correct claims under the provisions of the bankrupt law, which was objected to by the creditors who now are the appellees in this case, represented by the trustee in bankruptcy, and the said objections constitute a part of the record of this case. Upon the proposition to prove said claims and the objections filed as aforesaid, the referee heard the testimony of both sides upon the issue made by said objections filed, and the referee, upon considering said evidence, rendered his judgment against these mortgagees, present appellants, to which judgment appellants excepted and filed their petition for review. On May 3, 1899, said petition for review came on to be heard in said district court, when, in lieu of the hearing of the same, counsel for both sides entered into an agreement by which the judgment of the referee, and all proceedings before the referee, as well as the proceedings for review, were set aside without prejudice to either side, and the whole matter was referred to the referee to take testimony, either party having the privilege to introduce any or all of the testimony contained in the petition for review, to be passed upon by the court as to its admissibility and competency. Under said agreement on May 3, 1899, appellants filed their petition showing that in accordance with the order of the court the goods had been sold by the referee, and the sum of $9,500 realized from the same, and prayed that the said sum be paid over to them on their said mortgages, or so much thereof as was necessary to extinguish the same, to which petition W. G. D. Tonge, trustee in bankruptcy, in behalf of the unsecured creditors, and in behalf of those that had surrendered their liens, filed his answer, making exactly the same objections and raising the same issues as were made in the first proceeding before said referee. On the 21st day of June, 1899, the referee, under the agreement and order of the court aforesaid, commenced taking testimony, which testimony appears in the present record. On the 10th day of January, 1900, this case upon the petition and evidence, as certified by the referee, came on to be heard in the said district court, and no part of the evidence was ruled out as incompetent or inadmissible, and no motion was made to rule out any part of the same. The court, after hearing and considering the whole of the evidence taken and certified by the referee, and the argument in said case, decided against appellants, and decreed: "(1) That each and every one of said so-called mortgages held by petitioners, and set up in said petition, are declared to be illegal preferences, null and void as liens, and are hereby set aside. (2) That the prayer of said petitioners, that the fund in the hands of the trustee, resulting from the sale of assets of Steininger Mercantile Company, should be paid to the account of the alleged liens they hold, is refused and denied. (3) It is further ordered and decreed that said trustee now proceed to distribute the said fund to the general creditors, in regular course, so soon as the court shall have fixed the amount of allowances and expenses to be deducted therefrom. (4) It is further ordered that all the costs and expenses of this special proceeding shall be paid by the said petitioners. Compensation is hereby allowed to John D. Harrell, Esquire, special master, for his services in taking the testimony in this proceeding, to wit, the sum of ———— dollars, to which must be added the expenses paid out by the trustee, under previous order of the court, for stenographic services in the matter of taking said testimony, amounting to the sum of ———— dollars." This appeal is prosecuted to reverse said decree, and some 17 assignments of error, with many divisions and subdivisions, are presented, suggesting in every way specific errors of the trial judge; the whole amounting to the proposition that the appellants' mortgages were legal and valid, and should be fully recognized.

John I. Hall, Olin J. Wimberley, and B. B. Bowers, for appellants. William Gerrard, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). No appeal was taken from the decree adjudging the Steininger Mercantile Company bankrupt, and enjoining the sheriff from selling, under the foreclosure decrees, the property of the Steininger Mercantile Company, and appointing a receiver to take possession of and sell the property of said company, so that there is no question in this case but that the Steininger Mercantile Company committed an act of bankruptcy and was properly adjudged a bankrupt. The appellants are before the court insisting upon a mortgage lien on the property of the bankrupt. Section 67 of the bankrupt law of 1898 is, in part, as follows:

"That all conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors."

The question then presented is whether or not the Steininger Mercantile Company, in executing the mortgages to appellants, intended thereby to hinder, delay, or defraud creditors of said company. As the facts in this case show that the officers of the said company sent for counsel, who sat up all night executing mortgages in favor of favored creditors who were not pressing for payment nor asking for a mortgage, and the said mortgages so executed covered all the property of the mortgagors, and are conceded to have been with the intent that the debtors might thereby force indulgence from their creditors and further advances from those secured, this court is satisfied that the mortgages were executed with the intent to hinder, delay, or defraud some of the creditors of the company; and as this was the conclusion of the learned judge of the court below, and is made effective in the decree appealed from, the same is affirmed.