### RICHARDSON v. GERMANIA BANK OF CITY OF NEW YORK. *

(Circuit Court of Appeals, Second Circuit. January 21, 1919.)

No. 122.

1. BANKRUPTCY &#61;166(4)—PAYMENT TWO DAYS BEFORE MATURITY DOES NOT SHOW BAD FAITH, INVALIDATING PREFERENCE.

The mere fact that those in charge of a sick man's affairs paid on Friday a note due the following Monday does not authorize a holding that the bank received payment in bad faith, knowing a preference would thereby result.

2. BANKRUPTCY &#61;166(2)—INTENT OF TRANSFERROR IS IMMATERIAL IN DETERMINING PREFERENCE.

The intent of the transferror of property to prefer the transferee as a creditor is immaterial in determining whether the transfer was a voidable preference, under Bankruptcy Act, § 60b (Comp. St. § 9644).

3. BANKRUPTCY &#61;304—INTENT TO PREFER CREDITOR DOES NOT MAKE CONVEYANCE FRAUDULENT AS MATTER OF LAW.

The mere fact that the debtor intended to prefer a bank as a creditor by paying its claim two days before maturity, having an intimation that other creditors would start bankruptcy proceedings, does not in law establish a fraudulent transfer, void unless a present consideration is paid, under Bankruptcy Act, § 67e (Comp. St. § 9651); a preference being merely malum prohibitum, while a fraudulent transfer is malum in se.

4. BANKRUPTCY &#61;180—INTENTION TO PREFER CREDITOR DOES NOT WARRANT INFERENCE OF FRAUD.

The mere intention of a debtor to prefer a particular creditor by paying the claim before threatened bankruptcy proceedings were instituted is not sufficient to warrant an inference that the payment was a fraudulent transfer to hinder, defraud, or delay creditors.

In Error to the District Court of the United States for the Southern District of New York.

Suit by Carl H. Richardson, as trustee in bankruptcy, against the Germania Bank of the City of New York. Decree for defendant, and plaintiff appeals. Affirmed.

In February, 1913, defendant (hereinafter called the Bank) held the promissory note of F. P. Forster, a lawyer resident in Massachusetts, and then in such bad health that he could not attend to business matters. In the opinion of those nearest him (a son and nephew), he was fatally ill, and the malady so affecting him caused his death on January 18, 1915. For over a year before the due date of the note above mentioned, his son (a real estate broker) and nephew (a member of the New York bar) held powers of attorney from Mr. Forster, and they with a business associate of the nephew formed

---

&#61;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 252 U. S. —, 40 Sup. Ct. 393, 64 L. Ed. —.

a kind of committee, in charge of their principal's rather extensive and very tangled affairs. The note was due on Monday, March 3, 1913, but on Friday, February 28th, Mr. Forster, Jr., appeared at the Bank, and without explanation or unnecessary conversation paid the note in full. The amount was $3,000, being the balance of a much larger loan, that had been gradually reduced, and this payment extinguished Forster's indebtedness to the Bank. The son testified that he paid because he was "instructed" so to do by the other members of the committee above referred to.

On June 26, 1913, a petition in bankruptcy was filed in Massachusetts against F. P. Forster, adjudication followed, and the plaintiff herein is the duly created trustee, who several years later brought this action to recover from the Bank said $3,000, on the ground (1) that the payment thereof constituted a voidable preference under section 60b of the statute (Comp. St. § 9644) ; and (2) that the same payment was a "transfer * * * of [Forster's] property" within four months of petition filed, "with the intent and purpose on his part to hinder, delay, or defraud his creditors," and was therefore null under section 67e (Comp. St. § 9651).

At trial much effort was made to fix upon the Bank such knowledge of the affairs of Forster, and of a corporation which he for a time probably controlled, and which became bankrupt in August, 1912, as to require finding the necessary "reasonable cause to believe" that a preference was intended by the payment. The court held that no proof was given warranting such finding, whereupon, to sustain the allegations of transfer in violation of section 67e, plaintiff offered to prove, "in addition to facts already proved," "that the payment to the Bank was made after the persons in charge of the bankrupt's affairs had received intimation that some of the creditors intended to move, and that payment was made in advance of the due date of the note, for the purpose of getting the Bank paid in full, before the creditors had a chance to move." Thereupon the court inquired whether the evidence would constitute "any proof of notice to the Bank, other than that (already) offered," and, on receiving a negative answer, dismissed the bill. This appeal followed.

Carroll G. Walter, of New York City, for appellant.
Morton C. Fitch, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We are agreed that the payment was not a voidable preference, because (if for no other reason) the Bank had no reasonable cause to believe that it was intended thereby to give a preference. This being a question of fact, on which we agree with the trial judge, there is no propriety in discussing evidence; it would obscure, and not illuminate, the question of law urged upon us by the very able argument of appellant.

[1] We therefore only note (as triers of the facts) that we think the bare circumstances that those in charge of a sick man's affairs paid on a Friday the balance of indebtedness due on Monday (Saturday being a half holiday) quite insufficient reason, either for suspecting the payers' motives, or for impugning the good faith or good sense of the payee. It is an evidential fact, but, standing alone, of no moment; nor does it, when added to the other evidence, turn the scale. Thus we now assume that on February 28, 1913, the Bank, without any reasonable ground to believe that Forster or his agents intended a preference or a transfer hindering or in fraud of creditors, accepted in complete good faith payment of a lawful debt.

263 F.—21

This brings forward the point of law so ably urged; for we may on this appeal assume (under the offer of proof) that before February 28th Forster's committee suspected (i. e., had "received intimation") that their principal's creditors would either sue Forster or file petition (i. e., would "move"), and that this suspicion or expectation was the moving cause of the Friday payment, because they wished or preferred to pay the Bank rather than any other creditor. This seems to us to go as far as even appellant could ask.

[2] The offer of proof did not affect the case, viewed as a suit for a voidable preference, for the intent of the transferror is unimportant. Alexander v. Redmond, 180 Fed. 95, 103 C. C. A. 446.

[3] Thus it may be now admitted that there was an actual preference, and that the transaction shows every element of a voidable preference, except the essential "reasonable cause to believe" on the part of the payee; yet appellant, standing on the language of Dean v. Davis, 242 U. S. at page 444, 37 Sup. Ct. 130, 61 L. Ed. 419, asserts that the payment was a transfer of which (as a finding of fact) the intent, as well as the obviously necessary effect, was to deprive creditors "of the benefits sought to be secured by the Bankruptcy Act," and therefore, as a conclusion of law, such transfer is within the prohibition of section 67e; it *must* hinder, delay or defraud.

This is as much as to say that, having proved the unimportant element of a voidable preference (i. e., that the transferror intended a preference), the plaintiff thereby proved conclusively the vital element of a fraudulent or hindering conveyance, provided there was not "a present fair consideration" paid in "good faith." It does not modify or falsify this statement to dwell on the fact that Forster's agents paid the Bank in full and before maturity, not out of mere good will or gratitude, but from a desire to "get ahead" of other creditors; for that is always a moving reason for preferring. One cannot wish to favor some creditors, without also wishing (perhaps regretfully) to treat others with disfavor.

This doctrine cannot be spelled out of the facts of the Dean Case, for, despite a present consideration, the lower court found, and the higher one accepted the finding of absence of good faith and presence of actual fraud. 212 Fed. 91, 128 C. C. A. 658. Whether the language of the decision justifies the present contention depends, we think, on a survey of the earlier decisions in assumed harmony with which the Dean judgment was given.

That section 67e uses the phrase "to hinder, delay or defraud creditors" with the meaning attached thereto that has prevailed at least since the statute of 13 Eliz., is settled by Coder v. Arts, 213 U. S. 242, 29 Sup. Ct. 436, 53 L. Ed. 772, citing with approval Githens v. Shiffler (D. C.) 112 Fed. 505, and Re Bloch, 142 Fed. 674, 74 C. C. A. 250. Such transfers are avoided only when "actually fraudulent," and if made in "good faith," though for an antecedent consideration, are valid, even though their effect may be to hinder creditors "by removing from their reach assets of the debtor."

This ruling (in strict accord with historical law) was repeated in Van Iderstine v. National, etc., Co., 227 U. S. 575, 33 Sup. Ct. 343, 57 L.

Ed. 652, where the difference between fraudulent and preferential conveyances was authoritatively pointed out. There the lower (this) court found as a fact no intent to hinder or defraud (174 Fed. 518, 98 C. C. A. 300), and the higher tribunal ruled, in affirming, that it was not "in itself" fraudulent for an insolvent to use his own money in preferring.

The thought underlying the use of the phrase "actual fraud," and the assertion that some action is not "in itself" unlawful, is that fraudulent or hindering intent is a fact to be proved, not a rule of law to be quoted, and an inference of fact is itself a fact. As Lord Campbell remarked:

"I abstain from saying what are the particular proofs that are necessary, or from laying down any particular rule as to what amount of evidence * * * may be necessary. Those are facts to be inquired into in each particular case." Thompson v. Webster, 7 Jur. (N. S.) 531.

And on the subject generally see Kerr on Fraud (2d Ed.) c. 4.

Undoubtedly there are some badges of fraud so well known and frequently considered that rulings on them have become authority, and we speak of fraud in law as somehow different from fraud in fact. Whether the distinction has any practical value or not (see Wait, Fraud. Convey. [3d Ed.] §§ 8–10, 51) is at present immaterial, for there is assuredly no authority holding that facts such as above recited constitute fraud. In such a case as this, that is what fraud in law means. Whether they prove fraud is another matter, and one first to be disposed of by the triers of the facts, acting of course under rules of law.

This leads to the inquiry whether the Dean Case, in saying that a transfer of which the intent or necessary effect is "to deprive creditors of the benefits" of the Bankruptcy Act, laid down any new rule of law. One must first ask what benefits (germane to this point) does the act confer or preserve; and the answer is, in our opinion, an equitable distribution of the bankrupt's assets as the same existed four months before petition filed, unless lawfully disposed of in the interval. This must follow from the undeniable truth that many lawful dissipations or transfers of that property may occur within the statutory period. Wherefore the definition of the Dean Case leaves the old question still to be answered; and that question, in terms of this case, is: Do the facts prove any more than an intent to prefer, remembering it as law that an intent to prefer is not the same as an intent to defraud or delay? A debtor may have both intents, and proof of one may help out proof of the other; but by merely having one he cannot be conclusively presumed to have the other also. In so construing the language, we substantially agree with the Sixth Circuit in Watson v. Adams, 242 Fed. 445, 155 C. C. A. 217.

What was done in the Dean Case was to correct certain language of the cases criticized. In Sargent v. Blake, 160 Fed. at page 62, 87 C. C. A. 213, there are words that may be read as meaning that a preferential transfer cannot be a fraudulent conveyance, because it cannot "evidence" it; and in Re Baar, 213 Fed. at page 629, 130 C. C. A. at page 293, it is said that a mortgage could not be set aside under section 67e "unless it was given and accepted with the intent of hinder-

ing," etc.; and the other criticized decisions will on examination reveal similar pen slips.

It has never been doubted that fraudulent intent on the transferee's part is cogent corroborative evidence that fraud permeates the whole transaction; but the Dean decision is a reminder (1) that fraud in the transferror is enough under 67e, absent good faith in and a fair consideration on the part of the transferee; and (2) that evidence proving an intent to prefer is (usually at all events) relevant to an alleged intent to defraud or delay; but there is not, and we believe never has been, any rule of law announced dispensing with affirmative preponderating credible evidence establishing as a fact an "actual" subsisting intent to defraud or unlawfully hinder.

The cases relied on by appellant—Egan, etc., Bank v. Rice, 119 Fed. 107, 56 C. C. A. 157; Re Steininger Co., 107 Fed. 669, 46 C. C. A. 548; Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 555, and Sherman v. Luckhardt, 67 Kan. 682, 74 Pac. 277—announce no such rule, nor any other now relevant, except that the innocence, ignorance, or good faith of the transferee will not defeat an action wherein transferror's fraud is in fact found, unless there be also a "present fair consideration," passing in good faith from the transferee; and so much we recently held in Parker v. Sherman, 212 Fed. 919, 129 C. C. A. 437.

The opinion of Pollock, J. (now United States District Judge) in the Luckhardt Case, is an early and very clear exposition of this doctrine. The endeavor to apply it in Kingsbury v. First National Bank, 71 Kan. 570, 81 Pac. 187, is apposite here; it being held that evidence showing a preference only did not prove a fraudulent intent. The facts of that case are worth comparing with the meager evidence before us.

So far, then, as the legal rule is concerned, we think it still fairly stated (as it had often been put before) in Re Braus, 248 Fed. 64, 160 C. C. A. 195, where we said that the fact that a transfer operates incidentally to hinder or delay creditors is not "in itself" sufficient to make it void; every conveyance by a debtor may have that effect to some degree. The intent denounced by the statute is only the intent unlawfully to hinder; only to that extent does any statute interfere with the jus disponendi, even of an insolvent.

[4] Thus we are brought to what is usually the principal, and oftentimes the only, question in cases of alleged fraudulent transfers: Can the triers of the facts draw an inference of fraud from the evidence before them?

We note the dictum in the Dean Case, 242 U. S. 444, 37 Sup. Ct. 132, 61 L. Ed. 419, that securing "an advance with which the insolvent debtor intends to pay a pre-existing debt does not necessarily imply an intent to hinder," etc., and the distinction of the Van Iderstine opinion (227 U. S. 582, 33 Sup. Ct. 343, 57 L. Ed. 652), that to prefer is malum prohibitum only, while to convey with intent to hinder, etc., is malum in se. We then find an intent to prefer, exercised by paying on Friday an honest debt due on Monday to a bank that had long obliged the bankrupt in respect of loans; but from that malum prohibitum we are quite unable to infer the necessary malum in se.

Comment on evidence showing relation of old business friendship be-

tween Forster and the Bank might be much extended; but we prefer to leave the matter where it illustrates our opinion, that a very plain desire to prefer, and thereby incidentally to hinder creditors, is (1) not as matter of law an intent obnoxious to section 67e; and (2) is not persuasive in point of fact that such intent, evil in itself, ever existed.

The elements productive of that intent, denounced as malum in se, can never be defined. They vary as do facts, and any judge or jury, dealing with facts by some rule of thumb, will always miss the human touch. Testimony can never be tested or weighed by machine. A comparison of the facts as recited in the Dean Case, below (212 Fed. 88, 128 C. C. A. 658), with those told in the Kingsbury Case, supra, will illustrate this quite instructively.

Decree affirmed, with costs.