**354**

**In re GATEWAY INVESTMENTS CORPORATION, Debtor.**

**Soneet KAPILA, Chapter 11 Trustee, Plaintiff,**

**v.**

**Isaac HAMAOUI, and Crown Center Inc., Defendants.**

**Bankruptcy No. 92–23537. Adv. No. 92–0942–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Jan. 22, 1993.

Scott Newman, West Palm Beach, FL, Marcie R. Getelman, Miami, FL, for plaintiff.

Mariaelena Gayo–Guitian, Fort Lauderdale, FL, for defendant, Isaac Hamaoui.

Arthur Rice, Miami, FL, for defendant, Crown Center Inc.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge by Special Designation.

This is a core proceeding and this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(K), (H); 28 U.S.C. § 1334 and the General Order of Reference of the United States Bankruptcy Court for the Southern District of Florida.

This Memorandum of Decision constitutes findings of fact and conclusions of law issued under F.R.Civ.P. 52 as made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The trustee, Soneet Kapila as Chapter 11 Trustee, seeks, under complaint filed September 22, 1992, to avoid alleged preferences in favor of the defendants Isaac Hamaoui and Crown Center, Inc. as insiders pursuant to § 547(b) of the Bankruptcy Code and further to avoid alleged fraudulent transfers in favor of said Defendants pursuant to 11 U.S.C. § 548(a).

From the records in this case and the evidentiary hearings held the following findings of fact are made and conclusions reached.

## FINDINGS OF FACT

An involuntary petition for relief under Chapter 11 was filed against Gateway Investment Corporation (Gateway) on August 6, 1992 to which it consented on August 12, 1992.

The plaintiff, Soneet Kapila, is the duly qualified and acting trustee by virtue of the approval of his appointment by this Court on or about August 14, 1992.

Gateway is a reorganized debtor by virtue of a consensual Chapter 11 plan confirmed by this Court on May 16, 1990.

On April 24, 1992 Hamaoui purchased 98% of the capital stock of Gateway and, as a result, became the sole shareholder, (except for 2% owned prior stockholders), and he also became sole officer and director of the debtor. At about the same time Hamaoui organized Crown Center, Inc. (CCI) as a management company with a monetary investment of $1,000.00 and shortly thereafter he transferred his shares of stock in Gateway to CCI. He became the sole shareholder, officer and director of CCI.

On May 4, 1992 Hamaoui transferred $189,271.02 from Gateway to CCI. Of this sum $90,000.00 was used to pay tax obligations of Gateway.

On June 15, 1992 Gateway as owner and CCI as agent entered into a real estate management agreement under which CCI was employed as the sole and exclusive renting and management agent of the property of the owner (Gateway) known as Crown Center Office complex and Telematics Building located on West Cypress Creek Road, Fort Lauderdale. The agreement spelled out the responsibility of the agent in the renting and management of the property for which CCI was to receive as compensation 5% of all rent and other income from the property.

Paragraph 9 of said agreement provided that it "shall become effective on May 15th, 1992 and shall continue in full force and effect until and including December 31st 1995." In fact CCI did undertake the management of the property on May 15, 1992.

The agreement was executed in behalf of both the owner, Gateway, and the agent, CCI, by Isaac Hamaoui.

The property managed by CCI comprised 20 acres of land on four streets with six buildings thereon and an area of 410,000 square feet. Prior to the taking over of management by CCI the property had been neglected with no improvements made by

Gateway for a period of 2 to 3 years. CCI engaged the services of Hamaoui, his son, his daughter who also had a real estate broker's license, a secretary with a salary of $250.00 a week, a janitor at $450.00 a week, and a lawyer who was also an accountant and was paid $2,500.00 a month for his services which included keeping the books of both Gateway and CCI. They were all paid from the 5% commissions received by CCI in the management of the property.

Hamaoui, in behalf of CCI, pursuant to the management agreement began the task of improving the premises by cleaning the sidewalks, curbs and greens working four men for two months, painting and erecting signs for 180 parking spaces to be used by students of Kaiser Community College, a tenant. He had a canopy erected with the name of the College and started negotiations with it for additional rental space. He worked at the CCI office 5 to 6 hours on a daily basis over a period of 4 to 5 months. During one week he was on the premises from seven in the morning until nine at night monitoring the parking while solving a dispute between tenants. He hired an architect to design plans for additional rental space in anticipation of increasing revenue. In sum the services of CCI as management agent were extremely beneficial to Gateway.

Prior to the execution of the management agreement Gateway managed the property at a cost of $17,394.00 a month.

CCI was ousted from the property on August 14, 1992 when the appointment of the plaintiff as trustee was approved by the Court.

CCI collected the following rents from April through August, 1992:

| April | $443,296.23 |
|-------|-------------|
| May | 501,083.15 |
| June | 249,798.56 |
| July | 463,341.44 |
| August | 450,000.00 |

The management fee of 5% of all rental and other income of the property is reasonable. However, since CCI was not incorporated until April 24, 1992 and Hamaoui did not purchase 98% of the stock for Gateway until that date it is not entitled to a 5% fee on the rents of $443,296.23 collected during April. Further since the $450,000.00 for August is a projected amount for the entire month and CCI was dispossessed by the trustee on August 14 CCI would be entitled to no more than 5% on ½ of that sum or $225,000.00.

The accounting rendered by CCI to the trustee is as follows:

| | |
|---|---|
| Received by CCI from Gateway | $189,271.02 |
| Rental income | 114,680.31 |
| | $303,951.33 |
| Expenses paid by CCI for Gateway | 136,469.30 |
| | $167,482.03 |
| Turned over to trustee by CCI | 60,685.15 |
| Retained by CCI as Commissions | $106,796.88 |
| Commissions claimed earned by CCI | 105,575.96 |
| Overpayment to CCI | $ 1,220.92 |

Of the commissions charged by CCI the sum of $39,375.00 was paid pre-petition and the balance postpetition.

Hamaoui was an insider as defined under § 101(31) of the Bankruptcy Code and the Debtor was insolvent when the transfers were made.

## CONCLUSIONS AND DISCUSSION

The Plaintiff as trustee seeks avoidance of the transfers both as a preference and as a fraudulent transfer.

The Court is not persuaded that there was any actual intent on the part of CCI or Hamaoui to defraud any entity to which the Debtor, was or became on or after the date that the transfers were made or the obligations were incurred, indebted.

■ Since section 548(a) requires an actual intent to hinder, delay or defraud, its application cannot be mechanical. As Judge Hough aptly said:

The elements productive of that intent. . . . . . can never be defined. They vary as do facts, and any judge or jury, dealing with facts by some rule of thumb, will always miss the human touch. Testimony can never be tested or weighed by machine. *Richardson v. Germainia Bank*, 263 F. 320 (2 Cir.1919) cert. denied 252 U.S. 582, 40 S.Ct. 393, 64 L.Ed. 727 (1920); *Kielb v. Johnson*, 23 N.J. 60, 127 A.2d 561 (1956); 4 Collier 15th Ed. 548–48.

■ Under Florida law, whether a transfer is made to the end, purpose or

intent to delay, hinder or defraud a creditor must be determined by the facts and circumstances of each particular case. *In re Hytha* 39 B.R. 196 (S.D.Fla.1984). The intent trustee must prove under § 548(a) must be more than a simple intent to defraud a creditor. *In re Lucar Enterprises, Inc.* 49 B.R. 717 (S.D.Fla.1985) *Richardson v. Germania Bank* 263 Fed. 320 (2nd Cir. 1919); *Irving Trust Co. v. Chase National Bank* 65 F.2d 409 (2nd Cir.1933); *Sargent v. Blake* 160 Fed. 57 (8th Cir.1908); *In re Braus* 248 Fed. 55 (2nd Cir.1917).

The record is clear that the Plaintiff has failed to establish any intent on the part of CCI or Hamaoui to delay, hinder or defraud any creditor and, therefore, the Plaintiff has not sustained his burden of proof under § 548(a).

The Court appreciates the attempt of the Plaintiff to bring himself within the holding of *In re F & C Services, Inc.* 44 B.R. 863 (S.D.Fla.1984) that a general scheme or plan to strip the Debtor of its assets with no regard for the needs of the Debtor's creditors can support a finding of actual fraudulent intent. However, no evidence has been adduced by the Plaintiff to support any such scheme or plan.

Likewise the Plaintiff seeks solace from *J.I. Kelley Co. v. Pollack* 49 So. 934 (1909) under which fraud will be presumed when the transfer occurs between two corporations controlled by the same officers and directors. As pointed out by the Plaintiff, the Court, in *J.I. Kelley Co.* said:

> When the legal effect of a conveyance is to hinder or delay creditors, the intent [to defraud] will be presumed, regardless of the actual motives of the parties.

In the instant case the legal effect of the transfer was not to hinder or delay creditors and there was no intent to defraud. There was a quid pro quo. CCI and Hamaoui preformed valuable management services for the Debtor at a reasonable charge. Without the management agreement the Debtor would have to incur the expense of the rental and management services at substantially the same cost. There was no depletion of assets as a result of performance under the agreement and the creditors were not materially affected. The Debtor in fact received a reasonably equivalent value in exchange for its transfer of the amounts of the 5% commissions earned by CCI.

§ 548(a)(2) does not authorize the voiding of a transfer which "confers an economic benefit upon the debtor either directly or indirectly. *In re Rodriquez* 895 F.2d 725, 727 (11th Cir.1990); *Rubin v. Manufacturers Hanover Trust Co.* 661 Fed.2d 979, 991 (2d Cir.1981). In such a situation "the debtor's net worth has been preserved" and the interests of the creditors will not have been injured by the transfer. Id.

## THE ALLEGED PREFERENTIAL TRANSFER

Under § 547(b) the Plaintiff as trustee made avoid any transfer of an interest of the Debtor in property ...

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made ...

  .   .   .   .   .

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under Chapter 7 of this title;

However, a trustee may not avoid such a transfer ...

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a contemporaneous exchange.

Under the Bankruptcy Code a "transfer" includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, including retention of title as a

security interest." § 101(54)[58]. For property other than realty, the transfer is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." § 547(e)(1)(B) *In re Conner* 733 Fed 2d 1560, 1562.

■ Hence transfer of the $189,271.02 from Gateway to CCI was perfected on May 7, 1992. On that date it became the property of CCI although for reasons better known to Hamaoui the sum of $136,-469.30 was used by CCI to pay taxes and other expenses of Gateway. Rental income was added to the original sum received by CCI and the total became subject to the commissions of 5% earned by CCI in the management of the property. The Court considers the payment of these commissions as transfers intended by Gateway as debtor and CCI as creditor as contemporaneous exchanges for new value given to the debtor and in fact substantially contemporaneous exchange as such they are not subject to avoidance by the plaintiff as trustee. § 547(c)(1)(A), (B)

■ Such payments were also in satisfaction of a debt incurred under the agreement in the ordinary course of business or financial affairs of the debtor and CCI as transferee made according to ordinary business terms. As such they are not subject to avoidance. § 547(c)(2)(A–C). *In re Jerry–Sue Fashions, Inc.* 91 B.R. 1006, 1008 (Bkrtcy.S.D.Fla.1988)

The Plaintiff is not entitled to avoidance either as a preference or a fraudulent transfer.

The 5% fee for management is considered reasonable. The Court rejects the opinion of the Plaintiff's expert that a 2½% rate is adequate especially since he related it to an off site type of management. On the other hand Floyd Cerf, a real estate broker who had considerable experience in property management, testifying in behalf of CCI and after hearing the testimony of Hamaoui as to the extent of services rendered, concluded that a range of 4 to 7% of the gross rent was reasonable. The Court accepts his opinion and determines that the 5% provided in the agreement is not excessive.

Although the Plaintiff is not entitled to avoidance the Court determines that he is entitled to the following:

$22,163.80 representing commissions charged by CCI for the month of April (CCI was not organized until almost the end of April);

$11,250.00 representing one-half of the commissions charged by CCI for the month of August. (The trustee's appointment was approved on August 14);

$1,220.92 representing an overpayment by Gateway to CCI.

Accordingly CCI and/or Hamaoui should reimburse the Plaintiff the total sum of $34,634.72.

In accordance with this Memorandum of Decision a separate order, pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, is being entered.