In re: SIMCO MECHANICAL,
INC., Debtor,

Donna BUMGARDNER,
Trustee, Plaintiff,

v.

William SIMMS, Mayumi Simms, Simms
International Marketing Co., Inc. a/k/a
Simco Mechanical a/k/a Simco, Inc.,
Defendants.

Donna BUMGARDNER,
Trustee, Plaintiff,

v.

SUN BANK/SOUTH FLORIDA,
N.A., Defendant.

Bankruptcy No. 90–26530–BKC–SMW.
Adv. Nos. 92–1060–BKC–SMW–
A, 92–1023–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 16, 1993.

Robert C. Meyer, Raymond L. Placid, Coral Gables, FL, for trustee-plaintiff.

Larry R. Leiby, Steven M. Rubertone, Leiby Ferencik Libanoff and Brandt, P.C., Miami, FL, for defendants, William Simms, Mayumi Simms, Simms Intern. Marketing Co., Inc. a/k/a Simco Mechanical a/k/a Simco, Inc.

William C. Davell, Rogers, Morris & Ziegler, Fort Lauderdale, FL, for defendant, Sun Bank.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge (Sitting by Designation).

This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(1), (2)(F), (H); 11 U.S.C. § 544, 11 U.S.C. § 547, 11 U.S.C. § 548, 28 U.S.C. § 1334 and the General Order of Reference of the United States Bankruptcy Court for the Southern District of Florida issued under 28 U.S.C. § 157(a).

This Memorandum of Decision constitutes findings of fact and conclusions of law under FR Civ.P. 52 made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Plaintiff, Donna Bumgardner as Trustee of the Debtor's estate, on October 13, 1992 filed two separate complaints for the avoidance of alleged and preferential transfers—one against William Simms et al. under Adversary Proceeding No. 92–1060 and the other against the Sun Bank/South Florida, N.A. under Adversary Proceeding No. 1023.

These complaints and adversary proceedings have been consolidated under No. 92–1023 by Order entered November 4, 1992. Under said complaints the Plaintiff seeks to avoid alleged preferential and fraudulent transfers pursuant to 11 U.S.C. §§ 547 and 548 respectively. The Plaintiff has dropped its preference count I against defendant, Sun Bank.

An evidentiary hearing was held on November 18 and December 1 and 2. Based on the evidence received, the memoranda submitted and the records in this case the following findings of fact are made and conclusions reached:

## FINDINGS OF FACT

Simco Mechanical, Inc., the Debtor, filed a voluntary petition for relief under the Bankruptcy Code on September 14, 1990.

Donna Bumgardner, the Plaintiff, was appointed trustee by this Court in October, 1990 and she is the duly qualified and acting trustee.

The defendant Simms International Marketing Co., Inc. (International), a corporation engaged in the business of design, installation and servicing of air conditioning and ventilating systems, with William Simms (Simms) as the principal stockholder, director and President did prior to January 17, 1990 conduct business for a period of about twelve years. In conjunction with the operation of such business it maintained a demand deposit account since 1985 in the name of "Simco, Inc." with defendant, Sun Bank.

Simms used the Simms, Inc. account to make payments on International's loans with Sun Bank. Said loans were guaranteed by Simms and his wife Mayumi Simms and they were also secured by accounts receivable of International and by monies pledged or deposited with the bank which security and collateral were properly perfected by the filing of UCC–1 forms.

Some time prior to January 17, 1990 Simms negotiated with Mark A. Nelles (Nelles) for the sale and purchase of International. This was followed by a written agreement executed on January 17, 1990

by International and Simco Mechanical, Inc. (Mechanical), a Florida corporation to be formed by Nelles and actually organized by the filing of Articles of Incorporation in the office of the Secretary of State of Florida on February 1, 1990.

At the time of purchase of International, Nelles had absolutely no experience in the type of business being conducted by the seller.

The sale price was $88,000.00 which was subsequently reduced to $62,500.00.

The written Sale and Purchase Agreement was prepared by Nelles' attorney and it contained the following pertinent provisions:

SECTION 1. PURCHASE AND SALE OF ASSETS.... Seller agrees to sell to Buyer and Buyer agrees to purchase from seller, the following: ... ... net trade accounts receivable defined as trade accounts receivable less payables applicable to such receivables, (hereinafter referred to as "accounts receivable")

SECTION 5. WARRANTY AGAINST ENCUMBRANCES. Seller warrants that the assets are now free and clear from all liens and at the time of delivery shall be free from any security interest or lien or encumbrances except for those liens and encumbrances listed in exhibit "A" attached.

Exhibit "A" attached to the Agreement is a "DESCRIPTION" of the physical personal property sold and makes no reference to accounts receivable.

Also attached to the Agreement is an assignment of Accounts Receivable by International to Mechanical dated January 17, 1990 and signed by Simms as President which in pertinent part recites under paragraph 5:

Such claims or accounts have not been sold, assigned, transferred, or pledged, and aside from the Assignor, no person or persons, or corporation or corporations, has or have any lien on, or claim to, such claims or accounts or the merchandise described therein, or any part thereof.

Simms acknowledged that the representations there were no liens against the accounts receivable were not true. However, Nelles was never furnished with a list of such accounts either prior to or at the closing. The transaction was handled in a very loose fashion. Nelles took no part in the operation of the business for several weeks after the agreement was signed and made no effort to determine the financial status of the business. In fact it was operated by Simms under a written Consulting and Non-Competition Agreement between Mechanical and Simms dated January 17, 1990 under which Simms was to render consulting services for the sum of $300,000 payable in three equal payments of $100,000. Under the circumstances the untrue statements as to the accounts receivables were not made with any intent to deceive on the part of Simms.

Simms was given complete authority to sign checks from the Simms, Inc. account. Mechanical or Nelles signed none of the checks on this account.

On January 17, 1990 the fair market value of the assets of International was in excess of its liabilities. It had a net worth in excess of $300,000.00 and through the end of January the net worth of Mechanical was in excess of $250,000.00.

After the transfer of the business by International to Mechanical there was no cash flow problem and Mechanical was able to meet its financial obligations. Its statement of April, 1990 showed an average balance of $63,089.00. It was never sued by any creditor for payment of any account. The Debtor was not insolvent during the months of January, February and March, 1990.

During the period of negotiation for the sale of the business to Nelles Simms met with Jonathan O. Teetor, the loan officer of Sun Bank, and informed him that he was contemplating a sale of International but was not at liberty to disclose the name of the purchaser who wished to keep the matter confidential so that it would not prejudice his then employment.

Simms did not disclose to Teetor the date or terms of the sale and therefore, Teetor

was in no position to approve or disapprove of the sale. Nor did he do so. However, he did meet with Nelles after the sale was consummated and suggested that he apply for a line of credit with Sun Bank indicating that any loans would have to be guaranteed by Nelles and his wife and the accounts receivable of Mechanical would have to be assigned to the Bank and be subject to a security interest.

Nelles did apply and obtained a line of credit from Sun Bank for $175,000.00 which he decided not to use since it then became apparent to him that he did not have the ability to run the business.

During the latter part of 1989 or early in 1990 Simms made Nelles aware of the terminal illness of his mother in-law in Japan and that it would be necessary for him to make a trip there with his wife. In fact they did make the trip during the first week in March, 1990. Upon his return Simms realized that Nelles was not happy with the business and he decided to terminate his relationship as consultant. They negotiated a settlement which resulted in the payment of $50,000.00 to Nelles from the sale price of $62,500.00 and the balance of $12,500.00 was used by Simms to pay taxes outstanding against the business. The settlement was formalized by a written release from Mechanical and Nelles to Simms, his wife and International dated April 20, 1990.

Nelles subsequently sold the business to Gerard Rogers for the sum of $2,000.00.

Prior to the closing of the sale from International to Mechanical no U.C.C. search was made by Nelles or his attorney which, if made would have disclosed that Sun Bank has a perfected security interest in all of the accounts receivable of International.

Simms' wife, Mayumi Simms, had always worked for International. She did not punch a clock but did in fact perform services for the corporation. After the sale, with full knowledge of Nelles, she continued as an employee of Mechanical for which she was paid the total sum of approximately $2,267.00.

Simms also made payment of attorneys' fees and other obligations incurred by the Debtor in the total sum of about $26,-000.00.

Over the years Simms had always reduced the indebtedness under International's line of credit to Sun Bank in increments of $50,000.00 or $100,000.00. In conformity with this practice Simms instructed Teetor at Sun Bank on February 7, 1990 and March 1, 1990 to debit the Simco, Inc. account in the sums of $50,000.00 and $51,-022.26, respectively, to pay off the balance due under said line of credit which was secured by accounts receivable.

### CONCLUSIONS OF LAW AND DISCUSSION AS TO ALLEGED PREFERENTIAL TRANSFER

■ The Plaintiff has dropped the Preference Count as to Sun Bank and has failed to establish preferences in favor of the other defendants.

Under § 547(b) the Plaintiff as trustee may avoid any transfer of an interest of the Debtor in property ...

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made ...

.   .   .   .   .

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under Chapter 7 of this title;

However, a trustee may not avoid such a transfer ...

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a contemporaneous exchange.

■ The first requisite under said section is that there must be a transfer of an interest *of the Debtor* in property. The evidence is clear that $62,500.00 represented a payment to International for its assets and the Debtor, Mechanical, had no interest in this money. In addition, such a transfer between the Debtor and International could not be avoided by the trustee since it was not made on account of an antecedent debt but was a contemporaneous exchange for new value given to the Debtor and in fact a substantially contemporaneous exchange. § 547(c)(1)(A), (B). *In Re Air Vermont, Inc.*, 40 B.R. 323, 331 (Bkrtcy.D.Vt.1984).

■ Avoidance is also precluded by the failure of the trustee to establish that the Debtor was insolvent at the time of the transfer as required by § 547(b)(3).

■ Likewise the transfers of the sums of $101,022.56 and $26,000.00, more or less, were not transfers of an interest in *the property of the Debtor* and were not made at a time when the Debtor was insolvent. Hence they are also not avoidable by the trustee. § 547(b)(3).

In making a determination as to insolvency the Court weighted the testimony of Gerald Goldstein, a CPA who was improved as a witness by the Plaintiff and that of Frank Pittanaro, a CPA who testified in behalf of the Defendants.

Witness Goldstein had not examined the books of the Debtor before it filed for relief and did so only after they had been turned over to him by the trustee. It was apparent that his conclusions as to insolvency were predicated on only parts of the business records of the Debtor. He also invoked accounting principles which he identified as in use under the Internal Revenue Service for tax purposed in ascertaining the value of the Debtor's assets. These had no relationship to their fair market value. Asset values carried on a balance sheet, even if derived in accordance with "generally accepted accounting principles" do not necessarily reflect fair value. *In re F & S Central Manufacturing Corp.*, 53 B.R. 842, 849 (Bkrtcy.E.D.N.Y. 1985); *Pittsburgh Coke & Chemical Co. v. Bollo*, 560 F.2d 1089, 1092 (2 Cir.1977).

On the other hand Pittanaro had been employed with International since 1986, had prepared financial statements for it for the years 1988 and 1989 and was in a position to make a more accurate determination as to the value of the assets. In his opinion the assets had been fully depreciated and as working assets their value would exceed book value. Although Pittanaro had known Goldstein the latter never contacted Pittanaro for any information regarding the financial records of the Debtor.

The Court was impressed with the fairness and candor of Pittanaro as a credible witness while it appeared that Goldstein's efforts were concentrated solely towards the goal of establishing insolvency with the end result of creating an estate. Under the circumstances the Court accepts the conclusion reached by Pittanaro that the Debtor was not insolvent during the months of January, February or March, 1990 when the alleged preferential transfers were made.

■ The payment of $2,267.00 to Mayumi Simms likewise is not subject to avoidance as a preference. It did represent a transfer of property of the Debtor but the sums constituting the total of $2,267.00 were wages paid to her by the Debtor while she was a bona fide employee of Mechanical with the full knowledge of Nelles—a quid pro quo and a transfer in payment of a debt incurred by the Debtor in the ordinary course of business and according to business terms. § 547(c)(2)(A), (B), (C). *In re Jerry–Sue Fashions, Inc.*, 91 B.R. 1006, 1008 (Bkrtcy.S.D.Fla.1988).

In sum, none of the transactions constituted a voidable preference.

### AS TO ALLEGED FRAUDULENT TRANSFERS

Under the Counts relating to fraudulent transfers the Plaintiff targets all defendants including Sun Bank. She predicates her right to relief under 11 U.S.C. § 548 and 11 U.S.C. § 544(b).

Since § 548(a) requires an actual intent to hinder, delay or defraud, its application

cannot be mechanical. As Judge Hough aptly said:

> The elements productive of that intent ... can never be defined. They vary as do facts, and any judge or jury, dealing with facts by some rule of thumb, will always miss the human touch. Testimony can never be tested or weighed by machine. *Richardson v. Germania Bank,* 263 F. 320 (2 Cir.1919) cert. denied 252 U.S. 582, 40 S.Ct. 393, 64 L.Ed. 727 (1920); *Kielb v. Johnson,* 23 N.J. 60, 127 A.2d 561 (1956); 4 Collier 15 Ed. 548.

▇▇▇ Under Florida law, whether a transfer is made to the end purpose or intent to delay, hinder or defraud a creditor must be determined by the facts and circumstances of each particular case. *In re Hytha,* 39 B.R. 196 (S.D.Fla.1984). The intent the trustee must prove under § 548(a) must be more than a simple intent to defraud a creditor. *In re Lucar Enterprises, Inc.,* 49 B.R. 717 (S.D.Fla.1985); *Richardson v. Germania Bank,* 263 F. 320 (2nd Cir.1919); *Irving Trust Co. v. Chase National Bank,* 65 F.2d 409 (2nd Cir.1933); *Sargent v. Blake,* 160 F. 57 (8th Cir.1908); *In re Braus,* 248 F. 55 (2nd Cir.1917).

Acknowledging the caveat of Judge Hough that a court may miss the human touch by dealing with facts by some rule of thumb but applying the rule set out by Florida cases, supra, this Court is convinced that the Plaintiff has not sustained the burden required of her to establish fraud as enunciated in case law. *See In re Abraham,* 33 B.R. 963, 969 (M.D.Fla.1983).

§ 548(a)(2) requires the Plaintiff as trustee to establish:

> (a) that there was a transfer of an interest of the debtor in property or any obligation incurred by the debtor ...

> (2)(A) that the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation..., and

> (B)(c) was insolvent on the date such transfer was made or such obligation was incurred....

The evidence discloses that the trustee has not established any of the foregoing with the exception of the payment of $2,667.00 to Mayumi Simms which was a transfer of an interest of the Debtor in property but did not meet the other criteria for a preference or fraudulent transfer.

▇▇▇ § 544(b) permits a trustee to avoid a transfer of an interest of the debtor in property or an obligation incurred by the debtor that is avoidable under applicable state law. Accordingly the Plaintiff is seeking to invoke the Uniform Fraudulent Transfer Act adopted by Florida in 1987 with pertinent § 726.105 F.S. providing as follows:

> (1) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, ... if the debtor made the transfer or incurred the obligation:

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> 1. Was engaged or was about to engage in a business ... for which the remaining assets of the debtor were unreasonably small in relation to the business; or

> 2. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

In bringing herself within the purview of § 544(b) and § 726.105 F.S. the Plaintiff must establish that at the time of the transfers there was in fact a creditor in existence holding a valid claim against the Debtor who could have avoided the transfer in question under applicable nonbankruptcy law. *In re Abraham,* 33 B.R. 963, 969 (Bkrtcy.M.D.Fla.1983); *In re Primack,* 89 B.R. 954, 958 (Bkrtcy.S.D.Fla.1988) *In re Hecht,* 51 B.R. 72, 76 (Bkrtcy.D.Vt.1985); Collier's 15 Ed. 544 § 544.03; *In re O.P.M. Leasing Services,* 40 B.R. 380, 393. The Plaintiff failed to introduce any evidence showing the existence of such a creditor.

### AS TO SUN BANK

▇▇▇ The Court is satisfied that on the evidence Sun Bank did not either expressly or impliedly consent to the transfer of the assets of International to Mechanical so as to jeopardize its security interest in receiva-

bles pursuant to § 9–306(2) of the Uniform Commercial Code. Even if such consent had been established this Court adopts the rationale in the case of *In Re Martin Specialty Vehicles, Inc. M.S.V. Inc. v. Bank of Boston—Western Massachusetts N.A.*, 6 UCC Rep.Service 2d 337; 87 B.R. 752 (Bkrtcy.D.Mass.1988) holding that even if the secured party had consented to the sale of assets it would still retain its security interest.

At the time of the payments by Simco, Inc. to Sun Bank the latter had a perfected security interest in the accounts receivable of International and, therefore, the Debtor, Mechanical, received reasonably equivalent value in exchange for the transfer of funds totaling $101,022.26.

There was not a fraudulent transfer within the purview of § 548, § 544(b) or § 726.105 F.S.

Since the Plaintiff has failed to sustain her burden in establishing preferences and fraudulent transfers judgment is being entered in favor of all defendants.