En el Tribunal Supremo de Puerto Rico

| Hans López Stubbe y Otros<br><br>　　　Demandante-Recurridos<br><br>　　.V<br><br>J. Gus Lallande y Otros<br><br>　　　Demandados-Peticionarios | Certiorari<br><br>TSPR-98-8 |
| --- | --- |

Número del Caso: CC-96-413

Abogados Parte Demandante: Lic. Viviana Rodríguez Ortiz del Bufete
García & Fernández

Abogados Parte Demandada: Lic. Rafael Mayoral Morales del Bufete
Latimer, Biaggi, Rachid & Godreau
Lic. Iván Díaz de Aldrey
Lic. José A. Lebrón Tirado
Lic. Pedro A. Zorrilla Martínez
Lic. Víctor M. Agrait Defilló
Lic. Wallace Vázquez Sanabria
Lic. Valery López Torres
Lic. Angel  L. Tapia Flores
Lic. Luis R. Rodríguez Narváez
Lic. Gerardo L. Quirós López
Lic. Norberto Medina Zurinaga

Abogados Parte Interventora:

Tribunal de Instancia: Superior,Sala de San Juan, Unidad Especial de
Jueces de Apelaciones

Juez del Tribunal de Primera Instancia: Hon. Antonio J. Amadeo Murga

Tribunal de circuito de Apelaciones: Circuito Regional de San Juan

Juez Ponente: Hon. Aponte Jiménez

Fecha: 2/4/1998

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

HANS LOPEZ STUBBE Y OTROS

    Demandantes-Apelados

       vs.                       CC-96-413      Certiorari

J. GUS LALLANDE Y OTROS

    Demandados-Apelantes

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RIO

San Juan, Puerto Rico, a 4 de febrero de 1998.

Hoy interpretamos el artículo 804 de la Ley de Corporaciones del 1956, Ley Núm. 3 de 9 de enero de 1956, Leyes de Puerto Rico 7ma Ses. Ext. (1955), págs. 154-57, y resolvemos que no se requiere que una parte que demande al amparo de dicho artículo, demuestre un beneficio particular a un accionista o un perjuicio particular a un acreedor, para declarar judicialmente la nulidad de una transacción corporativa impugnada por el incumplimiento de sus disposiciones.

I

Para el 1984, la corporación J. Gus Lallande, Inc., se dedicaba principalmente a la distribución y venta de arroz en Puerto Rico. El 9 de febrero de ese

año, la Junta de Directores de la corporación autorizó la venta de una porción de sus activos para compensar por pérdidas sufridas en su capital. Correspondientemente, el 23 de marzo de 1984, los activos aludidos fueron vendidos, creando un flujo de capital a la corporación de $1,649,092.38. Esa venta también produjo un acuerdo de no competencia con ciertas líneas de distribución que fueron transferidas, lo que le brindó a la corporación la suma adicional de $200,000.00. Como resultado de estas transacciones, J. Gus Lallande, Inc., advino una ganancia ascendente a $374,094.

No obstante, el 25 de mayo de 1984, durante la reunión anual de los accionistas de la corporación, el Presidente les informó de la precaria situación económica por la que atravesaba la entidad. Les comunicó, además, que las pérdidas habían llegado a un nivel tan grave, que la corporación no estaba en condiciones de pagar dividendos. En cambio, la Junta de Directores de la corporación le recomendó a los accionistas una distribución de capital de aproximadamente $40.00 por acción, cantidad a ser pagada del producto de las ventas de los activos luego de haberse deducido una cantidad para el pago de ciertas deudas mediante abonos realizados a las mismas. La Junta y los accionistas aprobaron la medida ese mismo día.

La reducción del capital corporativo redimió el estado financiero de las acciones comunes emitidas y en circulación, a razón de $40.00 por cada una, pero ello infligió una merma en el capital corporativo de $466,840.00. Al efectuarse la distribución, los accionistas recibieron los dineros de manera proporcional a las acciones de las que eran dueños.[1]

La corporación nunca emitió un certificado para consignar que la reducción de capital se efectuó con el consentimiento de los directores y accionistas. Tampoco se especificó en documento alguno el procedimiento a ser empleado para esa reducción de capital, ni se indicó en documento que, luego de la transacción, la corporación mantendría activos remanentes suficientes para cumplir con las deudas sobrevivientes a ésta. Ningún periódico de circulación general publicó aviso o noticia sobre estos respectos.

Diecisiete meses después de la distribución de capital, el 10 de enero de 1986, la corporación acudió a la Corte de Quiebras para el Distrito de Puerto Rico con una petición de liquidación al amparo del Capítulo 7 del Código Federal de Quiebras. La corte designó al peticionario Hans López Stubbe como síndico correspondiente a la quiebra de la corporación.

Tomando riendas de su función, el peticionario instó demanda el 2 de diciembre de 1988, ante el Tribunal Superior, Sala de San Juan, contra aquellos que funcionaron como directores y accionistas de la corporación J. Gus Lallande, Inc. durante el período del 25 de mayo hasta el 10 de junio de 1984. Se alegó en la demanda que el 25 de mayo de 1984, la Junta de Directores de la corporación autorizó un pago a los accionistas por la cantidad de $466,840.00 en violación al artículo 804 de la Ley de Corporaciones del 1956, entonces en vigor, supra.[2] Ese artículo prohíbe la reducción del capital de una corporación privada cuando los activos restantes sean insuficientes para cumplir con cualesquiera deudas para las cuales la corporación no hubiese provisto.

_____

[1]De la cantidad que fue distribuida a los accionistas, la corporación retuvo $66,448.00 para pagar al erario de cualquier ganancia tributable que recibieran los accionistas no residentes como resultado de la transacción realizada.

[2]La Ley de Corporaciones de 1956, supra, fue derogada a favor de la Ley General de Corporaciones de 1995, Ley Núm. 144 de 10 de agosto de 1995, 14 L.P.R.A. sec. 2601 et seq. Por razón de que los hechos del caso de autos transcurrieron bajo la vigencia de la Ley de Corporaciones de 1956, supra, nos limitamos a interpretar la misma.

Se alegó también en la demanda que la reducción del capital corporativo se realizó sin cumplir con las disposiciones legales pertinentes, las que requieren, según una disposición del aludido artículo 804, que un certificado sea expedido para hacer constar la transacción. Se requiere, además, que el certificado sea registrado ante el Departamento de Estado de Puerto Rico y publicado en un periódico de circulación general, lo que según la demanda, no se hizo.

Se imputó en la demanda, en la alternativa, que la distribución impugnada resultó ser un pago de dividendos, declarado sin existir un exceso de activo neto sobre el capital corporativo, como lo requiere el artículo 517(a) de la Ley de Corporaciones de 1956, supra, pág. 131.[3]

Por estos fundamentos, se sostuvo en la demanda que la deliberada merma en los activos de la corporación constituyó un acto intencional o negligente por parte de los directores demandados del cual deben responder a favor de los acreedores que podrían ser perjudicados. Se reclamó la responsabilidad solidaria de los directores por la cuantía total del dividendo declarado y pagado y se alegó además que los accionistas de la corporación eran responsables de devolver aquella cantidad que les fue entregada ilegalmente en 1984 como repartición de dividendos o reducción de capital.

El 30 de diciembre de 1994, el tribunal de instancia emitió sentencia sumaria, disponiendo que la sección 544(b) del Código Federal de Quiebras, 11 U.S.C.A. sec. 544(b), facultó al síndico para instar demanda en un tribunal estatal para impugnar la medida de los directores que redujo el capital de la corporación. El tribunal determinó que controla, por analogía, el término prescriptivo de seis (6) años dispuesto por el artículo 521 de la Ley de Corporaciones de 1956, supra, pág. 132, el cual versa sobre la capacidad de acreedores de demandar a los directores de una corporación toda vez que sus actos afecten el cobro de sus créditos.[4]

En cuanto a los méritos de la demanda instada, el tribunal de instancia encontró que el trámite de pago a los accionistas no se efectuó conforme a lo dispuesto por el artículo 804 de la Ley de Corporaciones de 1956, supra, y que, por no existir controversia sobre los hechos ocurridos, procedía que los directores y accionistas de la corporación restituyeran los $466,840.00, más intereses a razón del 8.25 porciento anual a partir del 25 de mayo de 1984. La responsabilidad de los accionistas se limitó a la cantidad que cada uno recibió por concepto de la distribución realizada en esa fecha.

---

[3]El artículo 517 de la Ley de Corporaciones de 1956, supra, rezaba de la siguiente manera en la parte pertinente:

**"Artículo 517– Dividendos – Pago; corporaciones de recursos agotables**

(a) Con sujeción a cualesquiera restricciones contenidas en el certificado de incorporación, los directores de toda corporación creada con arreglo a este subtítulo, que haya emitido acciones del capital corporativo, podrán declarar y pagar dividendos sobre las acciones del capital corporativo, pero únicamente con cargo al exceso del activo neto sobre el capital corporativo, computado conforme a prácticas de contabilidad admitidas, de acuerdo con las disposiciones del artículo 505 de esta ley."

[4]El artículo 521 de la Ley de Corporaciones de 1956, supra, le concede a un acreedor un término de seis (6) años desde la fecha de un pago ilegal, según definido por el artículo 520 de la misma Ley, para instar acción judicial. Ese es el término con que cuentan los acreedores perjudicados para reclamar de los directores de una corporación por éstos haber declarado un dividendo ilegal que afecta el cobro de sus créditos.

Inconformes con la sentencia sumaria, los demandados acudieron al Tribunal de Circuito de Apelaciones con cuatro recursos de apelación. El 19 de agosto de 1996, ese foro emitió Sentencia para confirmar el dictamen del tribunal de instancia en cuanto a la determinación de que la corporación en su desembolso actuó en contravención a lo dispuesto en la Ley de Corporaciones de 1956, supra, y que el síndico contaba con legitimación activa para instar la demanda. Ese foro también confirmó a instancia en cuanto al término prescriptivo aplicable. Sin embargo, el Tribunal de Circuito de Apelaciones revocó la determinación sumaria de imponer una obligación absoluta a los directores y accionistas de restituir la totalidad del monto desembolsado y le ordenó al síndico demostrar la relación causal que relaciona a, y la extensión de la responsabilidad de, cada demandado.

El síndico acudió a este Tribunal el 13 de noviembre de 1996 por medio de un recurso de certiorari, solicitando la revocación de la parte de la Sentencia del Tribunal de Circuito de Apelaciones que le desfavorece. Las partes recurridas no presentaron ante nos un recurso para la revisión de la Sentencia emitida por el tribunal a quo, pero se opusieron al recurso presentado por el síndico a través de un escrito sometido el 22 de noviembre de 1996. El 6 de diciembre de 1996 expedimos el recurso de certiorari y ordenamos que se elevasen los autos originales del caso.

Los autos originales fueron elevados el 20 de diciembre de 1996. Los recurridos, Lallande, et al, y la Sucesión de Roberto Holvino, sometieron sus alegatos el 18 de febrero y 19 de marzo de 1997, respectivamente. Las partes que radicaron su alegato agrupándose como Lallande, et al., dicen en el mismo limitarse a responder a los señalamientos de error discutidos por el síndico, pero arguyen que ello no debe interpretarse como una renuncia a los planteamientos de prescripción señalados en su recurso de apelación radicado ante el Tribunal de Circuito de Apelaciones. El 20 de marzo de 1997, mediante Resolución declaramos que el caso quedaba sometido en los méritos para nuestra adjudicación.

No obstante, la recurrida Catherine M. Newsom solicitó prórroga para radicar alegato el mismo 20 de marzo de 1997 y ésta fue concedida hasta el 9 de abril de 1997.[5] Así lo hizo en esa fecha. En su alegato, esta recurrida arguye que los tribunales de Puerto Rico carecen de jurisdicción sobre su persona, siendo ella una residente del Estado de Florida que nunca ha tenido contactos mínimos con nuestra jurisdicción. El 16 de abril de 1997, el síndico peticionario sometió ante este Tribunal una "Moción Urgente Solicitando Permiso para Presentar Réplica a los Alegatos de los Recurridos".

Denegamos esa solicitud en la Resolución emitida el 23 de abril de 1997.

Perfeccionado el recurso que nos ocupa, pasamos a resolver sus controversias, las cuales están delimitadas por los dos señalamientos de error planteados por el peticionario, a saber:

1.  Erró el Honorable Tribunal de Circuito de Apelaciones al revocar la Sentencia Sumaria dictada a favor del peticionario al resolver que el Síndico está obligado a establecer que el cumplimiento de los requisitos exigidos por el artículo 804 de la Ley de Corporaciones fue la causa que motivó el perjuicio a los acreedores.

2.  Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que no se estableció la existencia de acreedores perjudicados por el incumplimiento de los requisitos exigidos por el Artículo 804 de la Ley de Corporaciones, y que de éstos existir, la cantidad a reclamarse estaría limitada a la extensión o "medida" del perjuicio ocasionado a los acreedores.

II

Los hechos que dieron paso a este caso, según fueron expuestos anteriormente, no están en controversia. El Tribunal de Circuito de Apelaciones sobre los mismos entendió que:

"La corporación no expidió certificado alguno consignando que se había obtenido el consentimiento y aprobación de los directores y accionistas para realizar la reducción de capital; la forma que ello habría de realizarse y que los

---

[5]Véase la Resolución emitida por este Tribunal el 7 de abril de 1997.

activos remanentes eran suficientes para satisfacer las deudas luego de la reducción. Tampoco publicó certificado alguno en un periódico de circulación general."[6]

Ante esa determinación, permanece como obstáculo para el peticionario el dictamen del tribunal a quo de que esa parte no demostró que la reducción de capital perjudicó a los acreedores. Al respecto, entendemos que los preceptos de derecho aplicables disponen que los hechos sobre ese perjuicio no constituyen una controversia fáctica que impida el trámite de la sentencia sumaria concedida por el tribunal de instancia. Nos explicamos.

Sabido es que la sentencia sumaria persigue el propósito de conceder un remedio rápido y eficaz, por vía de sentencia, cuando la parte que la promueve puede acreditar ante el tribunal que no existe una controversia genuina con relación a los hechos materiales del litigio. Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., Op. de 13 de junio de 1991, 128 D.P.R. 538 (1991), 91 J.T.S. 54; Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987). La sentencia sumaria procede sólo cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulta discernible de las acciones que no hayan sido refutadas por la evidencia presentada con la moción. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986).

Es también axiomático que la parte que solicita que se dicte sentencia sumaria en un litigio está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que, a la luz del derecho sustantivo aplicable, determinará una sentencia a su favor como cuestión de ley. Mercado Vega v. U.P.R., Op. de 18 de abril de 1991, 128 D.P.R. 273 (1991), 91 J.T.S. 41.

Los errores planteados en el presente recurso son, en realidad, de naturaleza legal y no fáctica. Los mismos versan sobre lo que es requerido por la sección 544 del Código Federal de Quiebras, supra, y por el artículo 804 de la Ley de Corporaciones de 1956, supra.

Reza la sección 544 del Código Federal de Quiebras, 11 U.S.C.A. sec. 544:

"544.    Trustee as lien creditor and as successor to certain creditors and purchasers

(a)    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -

(1)    a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2)    a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3)    a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**(b)**    The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." (Enfasis suplido)

A tenor con el inciso (a), para efectos de la demanda, el síndico adquiere la representación, derechos y prerrogativas de un acreedor que al momento de instituirse la acción ha concedido crédito al deudor en quiebra y obtenido en esa etapa, en relación con el

---

[6]Sentencia del Tribunal de Circuito de Apelaciones, emitida el 19 de agosto de 1996, pág. 11.

crédito concedido, una orden de ejecución contra la propiedad del deudor que no ha logrado satisfacer. Véase Collier on Bankruptcy, Vol. 5, 15th Ed.,544.02 Mathew Bender (1996). Por otro lado, la sección 544(b) del Código Federal de Quiebras le brinda al síndico el derecho de impugnar cualquier transferencia ejecutada por la corporación deudora, o cualquier obligación asumida por dicha parte, como si éste fuese un acreedor no asegurado.[7] In re Turner, 78 B.R. 166 (Bank. M.D. Tenn. 1987).

De especial relevancia al caso de autos es que la doctrina de derecho aplicable ha evolucionado para especificar que el síndico puede, según la sección 544(b), ejercitar los derechos existentes para los acreedores según los estatutos estatales relacionados a una transferencia fraudulenta o ilícita de fondos por parte de la corporación en quiebra. In re Jones, 184 B.R. 377 (Bankr. D.N.M. 1995); Butler v. Nationsbank, N.A., 58 F.3d 1022 (4th Cir. 1995); In re McFarland, 170 B.R. 613 (Bankr. S.D. Ohio 1994); In re Verco Indus. (Verco Indus. v. Spartan Plastics) , 704 F.2d 1134 (9th Cir. 1983). Al amparo de la sección 544(b) del Código Federal de Quiebras, el peticionario asumió la posición jurídica de un acreedor no asegurado que podría tomar acción legal en contra de la corporación deudora envuelta en el proceso de quiebra.

Aunque la sección 544(b) es un estatuto que autoriza al síndico a instar la acción contra la corporación, esa acción legal está sujeta a los estatutos estatales aplicables. Havee v. Belk, 775 F.2d 1209 (4th Cir. 1985). A esos fines, la Corte de Circuito de Apelaciones para el Octavo Circuito federal se expresó recientemente de la siguiente manera en In re Estate of Graven, 64 F.3d 453, 456 n.5 (8th Cir. 1995):

"[...]section 544 may allow the trustee to reach back to transfers made more than one year before the bankruptcy filing, because the statute of limitations from the state or applicable non-bankruptcy law applies.[...]"

En vista de lo anterior, es evidente que la sección 544(b) del Código Federal de Quiebras, supra, le permite al síndico -aquí peticionario-, instar una reclamación como la que hoy nos ocupa ante un tribunal estatal en contra de los directores y accionistas de la corporación, y en beneficio de los acreedores de la misma que estén protegidos ante la quiebra.

---

[7]Un requisito esencial para la aplicación de la sección 544(b), supra, es que, para que el síndico pueda instar una acción legal al amparo de ese estatuto, debe existir por lo menos un acreedor de la corporación que acudió a la Corte de Quiebras para su liquidación. Véase In re International Loan Network, Inc., 160 B.R. 1 (Bankr. D.C.C. 1993); In re Simco Mech., Inc., 151 B.R. 978 (Bankr. S.D. Fla. 1993); Hefforn v. Duggins, 115 F.2d 519 (9th Cir. 1940); y Menick v. Carson, 96 F.Supp. 817 (S.D. Cal. 1951). Nótese que un sólo acreedor es suficiente, no se requiere que exista más de uno. Collier, op. cit., pág. 544-15 n. 4. Véase además, United Const. Co. v. Milam (In re Diamond Block Asphalt Corp.), 124 F.2d 670 (6th Cir. 1942), cert. deneg., 317 U.S. 642 (1942), y First Presbyterian Church of Santa Barbara v. Rabbit, 118 F.2d 732 (9th Cir. 1940).

La causa de acción que nos ocupa cumple con ese requisito de que exista por lo menos un acreedor de quien el síndico pueda recibir sus facultades al amparo de la sección 544(b). En la vista ante el tribunal de instancia sobre la moción de sentencia sumaria, la parte peticionaria demostró que al menos dos acreedores yacen perjudicados por la distribución efectuada en el 1984. Véase Apéndice de la Petición de Certiorari presentada el 13 de noviembre de 1996, págs. 617-618; Minuta del Tribunal Superior, Sala de San Juan, para el día 14 de octubre de 1994. Esos acreedores son el Fondo del Seguro del Estado y el Royal Bank of Canada.

Ahora bien, la interpretación de la sección 544(b), en su relación al caso de autos nos dirige a la decisión de <u>Moore v. Bay</u>, 284 U.S. 4, 5 (1931). En esa ocasión la Corte Suprema de Estados Unidos dispuso que las leyes federales sobre quiebras federales imperan sobre las estatales.[8] Esa decisión, redactada por el Juez Oliver Wendell Holmes, le permitió a un síndico impugnar una transferencia de los fondos de la corporación en su totalidad, independientemente de la suma adeudada al acreedor, de quien el síndico derivaba sus facultades.[9] A esos fines, el tratadista Collier, en su obra <u>Collier on Bankruptcy</u>, <u>op. cit.</u>, sec. 544.09[5], confirma esa interpretación de que la sección 544(b) faculta al síndico para atacar la distribución de fondos en su totalidad. A esos efectos dice esa respetada autoridad:

"[...] [U]nder <u>Moore v. Bay</u>, the entire transfer is avoided to the extent necessary to benefit the estate. Since the recovery is for the benefit of the estate, all creditors holding unsecured claims share in the recovery, not merely those creditors whose rights are asserted. [...] [U]nder <u>Moore v. Bay</u>, the right of the trustee to recover is dependent upon just one creditor with a cause of action and not dependent at all upon the size of that creditor's claim against the debtor. In other words, an entire transfer can be set aside even though the creditor's claim is nominal [...]".[10]

Aunque la decisión de <u>Moore v. Bay</u>, de que el síndico puede atacar una transferencia indebida de fondos corporativos en su totalidad, ha sido motivo de cierta controversia y modificación jurisprudencial, nuestro examen de la cuestión concluye que la doctrina allí dispuesta ha sobrevivido hasta ser aplicable al vigente Código Federal de Quiebras, y que la misma es de aplicación a acciones al amparo de la sección 544(b), como es la de autos. Véase, como ejemplo, <u>Matter of Xonics Photomechanical, Inc.</u>, 841 F.2d 198 (7th Cir. 1988).

Por tanto, la sección 544(b) del Código Federal de Quiebras, <u>supra</u>, autoriza al síndico designado a perseguir judicialmente la anulación de la totalidad de la transacción impugnada. La anulación de la transacción no está limitada al monto de la cantidad debida a los acreedores. Treister, <u>Fundamentals of Bankruptcy Law</u>, pág. 151-53, 2da edición (1989). Por ende, nos parece claro que el peticionario, actuando como síndico al amparo de la sección 544(b) del Código Federal de Quiebras, <u>supra</u>, estaba facultado para anular la distribución de la totalidad de activos realizada entre los accionistas de J. Gus Lallande, Inc. Fue con ese propósito que el síndico peticionario demandó a los directores y accionistas mediante la invocación de la acción legal creada por el artículo 804 de la Ley de Corporaciones de Puerto Rico de 1956, <u>supra</u>. Dicho artículo rezaba:

**Artículo 804.    Reducción del capital**

(a)      Toda corporación que haya emitido acciones de capital, organizada con arreglo a este subtítulo o a las leyes vigentes en el Estado Libre Asociado, podrá, en cualquier momento, reducir su capital (1) con el consentimiento escrito, conforme a los registros corporativos, de los tenedores del número total de acciones de la corporación que tengan derecho al voto y estén a la sazón circulando, o (2) por resolución de la junta de directores, complementada por resolución aprobada por los tenedores de la mayoría de las acciones, conforme a los registros corporativos, en junta de accionistas para la cual, con arreglo a los estatutos corporativos, se hubiere cursado convocatoria por lo menos diez (10) días antes de la celebración de la misma. No se considerarán acciones en circulación las preferidas o especiales respecto de las cuales se hubiere requerido el rescate y dispuesto el pago

del precio de éste. <u>Deberá expedirse un certificado en el cual se consigne la obtención del consentimiento antes referido o la aprobación de una resolución según lo antedicho.</u> Se estipulará también en el certificado la forma en que habrá de hacerse y el

---

[8]<u>Moore v. Bay</u>, <u>supra</u>, versaba sobre la sección 70(e) de la Ley de Quiebras federal entonces vigente, la cual era el equivalente de la sección 544(b) del Código Federal de Quiebras que está en vigor y que nos ocupa.

[9]Véase el análisis de la Camara de Representantes, Report 8200, H.R. Rep. No. 595, 95th Cong., 15th Sess. 370 (1970).

[10]Véase <u>Collier</u>, Op. cit., pág. 544-20 y 544-21.

alcance que tendrá la reducción de capital corporativo. Este certificado deberá llevar el sello de la corporación y la firma de su presidente, o de un vicepresidente, y del secretario, o un subsecretario, y el presidente o el vicepresidente deberán autenticar el certificado ante un funcionario autorizado por las leyes del Estado Libre Asociado para reconocer firmas. Otorgado y autenticado de este modo, deberá radicarse y registrarse el certificado en las oficinas del Departamento de Estado. Con tal radicación y registro, entrará en vigor la reducción del capital. No podrá, empero, reducirse el capital de la corporación, a menos que, al reducirse, el activo restante a la corporación fuere suficiente para satisfacer cualesquiera deudas para cuyo pago no se hubiere provisto, lo cual se consignará en el certificado.

b) [...]

c) [...]

d) [...]

e) Cuando la corporación redujere su capital con arreglo a lo dispuesto en esta sección, deberá insertarse el certificado durante tres (3) semanas consecutivas, por lo menos una vez cada semana, en un periódico de circulación general publicado en el Estado Libre Asociado. La primera publicación se hará dentro de los quince (15) días siguientes a la radicación del certificado; y en defecto de tal publicación, los directores de la corporación serán solidariamente responsables a cualesquiera acreedores perjudicados por el incumplimiento de las disposiciones de esta sección; y los accionistas serán igualmente responsables hasta la cantidad que respectivamente reciban de la cifra total que se le retirare de este modo al que tuviere el accionista cuyas acciones no estén totalmente pagadas, por las deudas que contraiga la corporación hasta el momento de la reducción. (Énfasis suplido).

Es indiscutible que la distribución del capital corporativo que nos ocupa fue ilícita al efectuarse de manera contraria a la requerida por el artículo 804 de la Ley de Corporaciones de 1956, supra.[11] La ilegalidad de la conversión de fondos, de constituir

---

[11]El artículo 804 de la Ley General de Corporaciones de 1995, 14 L.P.R.A. sec. 2954, enmendó lo dispuesto en el artículo 804 de la Ley de Corporaciones de 1956, supra. Reza el vigente artículo 804 de la Ley General de Corporaciones de 1995, supra,:

**"Sección 2954 – Reducción de Capital**

(a) Toda corporación podrá, mediante resolución de su junta de directores, reducir su capital por cualquiera de los siguientes medios:

1) Reduciendo o eliminando el capital que esté representado por acciones de capital que han sido retiradas;

2) adjudicando a una compra o redención autorizada de acciones de capital en circulación, todo o parte del capital representado por las acciones compradas o redimidas, o cualquier capital que no haya sido asignado a ninguna clase en particular de sus acciones de capital;

3) adjudicando a una conversión o intercambio autorizado de acciones de capital en circulación, todo o parte del capital representado por las acciones objeto de la conversión o del intercambio, o todo o parte del capital que no ha sido asignado a ninguna clase en particular de sus acciones de capital, o ambas. La adjudicación se hará en la medida

activos de la corporación a ser ganancias de los accionistas, consiste en que se hizo la transferencia sin expedir un certificado de reducción del capital del ente corporativo y sin publicar el mismo en un periódico de circulación general. Ambos requisitos se exigen con el objeto de hacer pública la reducción de capital a los fines de que los acreedores y otros tengan la potestad de tomar las medidas necesarias para proteger sus respectivas acreencias.

Ante lo expuesto, es claro que erró el tribunal a quo al determinar que los directores y accionistas de la corporación no están sujetos a remunerar la totalidad de los fondos que recibieron de J. Gus Lallande, Inc., porque el peticionario no demostró que existe

---

en que la totalidad de tal capital exceda el total del valor par o el capital declarado de cualesquiera acciones no emitidas previamente y que puedan emitirse al efectuar tal conversión o canje; o

4)  transfiriendo al sobrante:

(i)  Todo o parte del capital que no esté representado por ninguna clase en particular de sus acciones de capital;

(ii) todo o parte del capital representado por las acciones emitidas de sus acciones de capital con valor par, cuyo capital sea en exceso de la totalidad del valor par de tales acciones, o

(iii) parte del capital representado por las acciones emitidas de las acciones de capital sin valor par.

b)  No obstante otras disposiciones de esta sección, no se realizará o efectuará reducción alguna del capital a menos que los activos de la corporación que queden, luego de tal reducción, sean suficientes para satisfacer cualesquiera deudas de la corporación para cuyo pago no se hubiere provisto de otra manera. Ninguna reducción del capital librará de responsabilidad a ningún accionista que no haya pagado totalmente sus acciones."

Nótese que la nueva versión del artículo 804 expande la facultad de reducir el capital a toda corporación, no sólo aquella que haya emitido acciones de capital; y elimina la mención del método a seguir para la aprobación de la reducción del capital. El artículo permite esta reducción sólo mediante resolución de la junta de directores. También han sido modificados los modos en que se realiza la reducción y elimina el requisito de publicación. Esta nueva encarnación del artículo 804 no contiene disposición sobre si el síndico cuenta con la potestad de impugnar la transacción en su totalidad. El hecho de que la nueva disposición sobre la disminución del capital corporativo no requiere la publicación que era esencial bajo el antiguo artículo 804 de la Ley de Corporaciones del 1956, supra, no socorre a los recurridos, ya que la nueva ley de corporaciones no rige, y la falta de publicación no es la única base para determinar que la transferencia que nos ocupa fue efectuada contrario a derecho.

una relación causal entre la distribución de los activos y el perjuicio al cual se enfrentan los acreedores.[12] La clave decisoria está explícitamente expuesta en el texto del artículo 804(a) de la Ley de Corporaciones de 1956, supra, el cual hacía mandatorio la emisión y publicación del certificado, pues "[...] con la radicación y registro entrará en vigor la reducción."[13] La tajante disposición de ese artículo establece que la distribución de los activos de la corporación J. Gus Lallande, llevada a cabo en el 1984, nunca entró en vigor. La misma es nula ab-initio.

El artículo 4 de nuestro Código Civil dispone que "[s]on nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez". 31 L.P.R.A. sec. 4; véase también Santiago Marrero v. Tribunal Superior, 89 D.P.R. 835 (1964), y Hernández v. Ayala, 68 D.P.R. 856 (1948).[14] Una transacción ilícita no concede derecho y, según la autoridad aludida, yace nula e inexistente, como si nunca se hubiese llevado a cabo. En su Sentencia Sumaria el foro de instancia determinó la ilegalidad de la distribución de activos corporativos sobre la cual gira el caso de autos. Esa ilegalidad de la transacción produce su nulidad jurídica.

Dado que la Sentencia del Tribunal de Circuito de Apelaciones expuso que no existe controversia sobre el hecho que los recurridos incumplieron con los requisitos dispuestos por el artículo 804 de la Ley de Corporaciones de 1956, supra, para la aprobación de una reducción de capital, el efectuado pago de $466,840.00 a los accionistas de esa empresa fue una distribución del capital corporativo ejecutada ilegalmente. Es claro que esa merma en los activos de la corporación benefició a sus accionistas, mientras que perjudicó a sus acreedores. Además, establecido que la distribución de activos efectuada en el 1984 es nula ante la Ley, procede que los beneficiados por esa repartición de fondos los restauren íntegramente a la entidad corporativa de su origen.[15]

III

Atendemos los argumentos instados por las partes recurridas de que, al momento de instada la demanda en su contra, ya se había extinguido su responsabilidad al respecto, pues había transcurrido el término prescriptivo aplicable a la acción.

En sus respectivas sentencias, tanto el tribunal de instancia como el Tribunal de Circuito de Apelaciones encontraron que la acción no estaba prescrita. Las partes así desfavorecidas contaron con la oportunidad de presentar un recurso de certiorari ante este Tribunal con el propósito de recurrir de esa determinación. No lo hicieron. No obstante, esas partes pretenden que revisemos la Sentencia recurrida en cuanto a unos errores que señalan en un alegato respondiendo al recurso de certiorari instado por la parte contraria. Es de esta forma que los recurridos pretenden resucitar la controversia sobre la prescripción. Ese ataque colateral es claramente improcedente en derecho. Reiteramos que una parte que interesa nuestra revisión de un dictamen viene obligada a radicar

---

[12]De más está decir que la responsabilidad de cada accionista se extiende sólo a su interés en la corporación.

[13]Como bien señala la parte peticionaria, las reglas de hermenéutica dictan que los términos mandatorios de un estatuto imponen un deber inevadible, por lo que el requisito de ley no puede ser interpretado como uno de carácter discrecional. Capó v. A. Hartman & Cía., 57 D.P.R. 196, 200 (1940).

[14]El texto del artículo 804 de la Ley de Corporaciones de 1956, supra, no dispone sobre la excepción aludida en el artículo 4 del Código Civil, supra.

[15]Una vez reintegrada la cantidad de activos de capital a la corporación y pagados los acreedores según corresponda, en la eventualidad de que exista algún sobrante, los accionistas podrían tener derecho a alguna participación, según las acciones que posean, al liquidarse sus activos.

oportunamente un recurso ante este Tribunal; la misma no puede atacar la Sentencia en alegatos, sometidos en capacidad de parte recurrida en un recurso instado por una parte adversa, donde se señalan errores de otra naturaleza que no incluyen la cuestión de prescripción.

La Regla 6.3 de Procedimiento Civil establece que la prescripción es una defensa afirmativa. Regla 6.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 6.3; véase también Ramos v. Trans Oceanic Ins. Co., 103 D.P.R. 298, 300 (1975). En repetidas ocasiones hemos señalado que una defensa afirmativa que no es levantada a tiempo, se considera renunciada, salvo que se demuestre que no se le omitió por falta de diligencia. Texaco P.R., Inc. v. Díaz, 105 D.P.R. 248, 250 (1976), y Epifanio Vidal, Inc. v. Suro, 103 D.P.R. 793, 794-95, (1975).

Igualmente, al resolverse por el tribunal apelativo la cuestión de prescripción de manera adversa a las partes recurridas y no haber presentado dichas partes un recurso ante nuestra consideración, están impedidas de levantar el asunto en su oposición al recurso presentado por la parte aquí peticionaria.

Reiteradamente este Tribunal a establecido el axioma jurídico de que "no existe discreción para asumir jurisdicción donde no la hay." Maldonado v. Junta de Planificación, 109 D.P.R. 839, 842 (1980); véase también Aponte Correa v. Policía de Puerto Rico, Op. de 5 de diciembre de 1996, 142 D.P.R. ___ (1996), 96 J.T.S. 157, pág. 384.

La jurisdicción de este Tribunal para la revisión de un dictamen final del Tribunal de Circuito de Apelaciones es fundada a través de la presentación oportuna de un recurso de certiorari en cumplimiento con los requisitos dispuestos en el Reglamento de este Tribunal. Según lo establecido por el artículo 3.002(d)(1) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada por la Ley 248 de 25 de octubre de 1995,[16] y la Regla 20(1) del Reglamento de este Tribunal,[17] al expirar el término de treinta (30) días

---

[16]Reza el artículo 3.002(d)(1) de la Ley de la Judicatura, supra,:

Artículo 3.002 – Competencia del Tribunal Supremo

d)  Mediante auto de Certiorari, a ser expedido discrecionalmente, revisará las demás sentencias o resoluciones finales del Tribunal de Circuito de Apelaciones.

1)  El recurso de certiorari ante el Tribunal Supremo para revisar las sentencias en recursos de apelación emitidas por el Tribunal de Circuito de Apelaciones deberá ser presentado en la secretaría del Tribunal Supremo dentro del término de treinta (30) días contados desde la fecha de notificación de la sentencia recurrida.

[17]Reza la Regla 20(1) del Reglamento de este Tribunal:

Regla 20 – Procedimiento en certiorari

(a)  El recurso de certiorari se formalizará presentando una petición de certiorari en la Secretaría del Tribunal Supremo, conforme a los procedimientos establecidos en este Reglamento.

(1)  Cuando el recurso de certiorari se presente para revisar una sentencia emitida por el Tribunal de Circuito de Apelaciones en un recurso de apelación, según lo dispuesto el Artículo 3.002 (d)

desde la fecha de notificación del dictamen del Tribunal de Circuito de Apelaciones las partes recurridas dejaron pasar su oportunidad de plantear un error sobre la cuestión de prescripción. Es inevadible la conclusión de que la determinación del Tribunal de Primera Instancia de que el término prescriptivo aplicable a acciones de esta índole es de seis (6) años es controlante sobre la controversia de autos y este Tribunal carece de jurisdicción para intervenir sobre ese respecto.

IV

Por último, atendemos la defensa de falta de jurisdicción in personam que pretende levantar la codemandada Catherine M. Newsom, quien acude ante nos como una de las partes recurridas. Con el propósito de sostener dicha defensa, la señora Newsom solicita que se devuelva el caso al Tribunal de Primera Instancia para que el demandante establezca la existencia de contactos mínimos con el foro local. Del expediente surge que el tribunal de instancia denegó una Moción de Desestimación por falta de jurisdicción in personam, presentada por la recurrida el 26 de enero de 1990. Posteriormente, ésta radicó una Moción de Reconsideración de dicha determinación el 17 de septiembre de 1990, en atención a la cual la ilustre sala sentenciadora emitió Resolución el 28 de septiembre de 1990 en donde señaló:

> "Entendemos que bajo las disposiciones de la Regla 4 de las de Procedimiento Civil y teniendo en cuenta el artículo 804, Inciso E, de la Ley General de Corporaciones de 1956, que Doña Catherine Newsom es accionista y que ella obtuvo dividendos y acciones por dividendos en varias ocasiones, el Tribunal tiene jurisdicción y procede que conteste la demanda dentro de los próximos 30 días."

La señora Newsom no recurrió de esta Resolución sino que se limitó a contestar la demanda levantando la defensa de falta de jurisdicción.[18]

Una vez dictada la Sentencia Sumaria por el tribunal de instancia, la cual guardaba silencio sobre la ausencia de contactos mínimos entre el foro y la señora Newsom, ésta presentó un escrito de Apelación ante el Tribunal de Circuito de Apelaciones argumentando la existencia de seis errores, el primero de los cuales giraba en torno a la falta de jurisdicción sobre su persona. La Sentencia del foro apelativo, archivada en autos el 27 de agosto de 1996, atendió todos los errores señalados por la codemandada excepto aquél que versaba sobre la jurisdicción in personam del tribunal sentenciador.

La defensa de falta de jurisdicción in personam es de naturaleza afirmativa y es suceptible de ser renunciada por la parte demandada mediante la sumisión voluntaria de ésta, ya sea de manera expresa o tácita. Véase Márquez Resto v. Barreto Lima, Op. de 19 de mayo de 1997, 143 D.P.R. ___ (1997), 97 J.T.S. 66, pág. 990; Sterzinger v. Rámirez, 116 D.P.R. 762, 789 (1985); Franco v. Corte, 71 D.P.R. 686 (1950).

---

(1) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, la solicitud deberá ser presentada dentro de un término de treinta (30) días. En caso de que una de las partes sea el Estado Libre Asociado de Puerto Rico, sus funcionarios, alguna de sus instrumentalidades, que no sea una corporación pública, o un municipio, el término para formalizar la petición será de sesenta (60) días. Los términos aquí dispuestos son jurisdiccionales.

[18]Del expediente también surge que el abogado de dicha parte no sólo compareció contínuamente ante el Tribunal representándola en todo momento, sino que se unió además a las Mociones en Oposición a Sentencia Sumaria que presentaron los demás codemandados y que también compareció a los fines de oponerse al nombramiento de un perito por el Tribunal.

El silencio del Tribunal de Circuito de Apelaciones en torno a la controversia que nos ocupa constituye en efecto un reconocimiento implícito de la existencia de jurisdicción sobre la persona de la señora Newsom, por lo que ésta debió haber o solicitado la reconsideración o recurrido de dicho fallo adverso dentro del término jurisdiccional de treinta (30) días señalado por el artículo 3.002(d)(1) la Ley de la Judicatura de 1994, supra, y la Regla 20(a)(1) del Reglamento del Tribunal Supremo de Puerto Rico. La señora Newsom dejó pasar dicho término jurisdiccional. Ahora comparece ante nos como recurrida en el caso de epígrafe y somete su alegato el 9 de abril de 1997, mucho después de transcurrido el término para revisar la sentencia del Tribunal de Circuito de Apelaciones señalando el error de falta de jurisdicción sobre su persona. Al no haber recurrido de la Sentencia de dicho foro apelativo que ignoraba el error señalado sobre la falta de jurisdicción in personam, la codemandada renunció en efecto al ejercicio de tal defensa. Por ello, este Tribunal carece de jurisdicción para atender el planteamiento sobre la ausencia de contactos mínimos levantado extemporáneamente por la señora Newsom en su alegato en oposición al recurso instado por el síndico.

V

Por los fundamentos expuestos revocamos la Sentencia emitida por el Tribunal de Circuito de Apelaciones y confirmamos la dictada por el Tribunal de Primera Instancia en todos sus extremos. Asimismo, devolvemos el caso al tribunal de instancia para que éste continúe con los procedimientos de manera conforme a lo aquí resuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


HANS LOPEZ STUBBE Y OTROS

    Demandantes-Apelados

       v.

                    CC-96-413    Certiorari

J. GUS LALLANDE Y OTROS

    Demandados-Apelantes


SENTENCIA


San Juan, Puerto Rico, a 4 de febrero de 1998.

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, dictamos Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones y confirmamos la dictada por el Tribunal de Primera Instancia en todos sus extremos. Asimismo, devolvemos el caso al tribunal de instancia para que éste continúe con los procedimientos de manera conforme a lo aquí resuelto.

       Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García concurre sin opinión escrita; el Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita; el Juez Asociado señor Rebollo López se inhibe.


               Isabel Llompart Zeno
           Secretaria del Tribunal Supremo


           BALTASAR CORRADA DEL RIO
           JUEZ ASOCIADO